DANIEL F. MAHONEY vs. KAREN J. MAHONEY.

Worcester. March 6, 1997. - July 14, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, & MARSHALL, JJ.

*Divorce and Separation,* Separation agreement, Pension benefits. *Social Security Act.*

The value of anticipated Social Security old age benefits is not an asset of a marital estate subject to equitable division under G. L. c. 208, § 34. [443-446]

In a divorce proceeding, the judge properly considered the husband's anticipated Social Security benefits in making an equitable distribution of the distributable marital assets. [446-447]

In a divorce action, the judge did not err in valuing the marital assets, with the exception of subtracting the full amount of an equity line of credit from the value of the vacation home rather than the amount actually borrowed, and the matter was remanded for recalculation of the marital assets and amendment of the judgment. [447-448]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on December 6, 1991.

The case was heard by *Joseph Lian, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John O. Mirick* for the defendant.

*James E. O'Connell, Jr.,* for the plaintiff.

MARSHALL, J. Karen J. Mahoney (wife) appealed from a judgment of divorce issued by a Probate and Family Court judge on March 15, 1994. She claims that the judge did not include as a marital asset, as he should have, the value of anticipated Social Security old age benefits of her husband, Daniel F. Mahoney (husband), for the purpose of dividing the marital estate pursuant to G. L. c. 208, § 34. She also argues that the judge overlooked other assets that should have been, but were not, included in the marital assets, and overstated certain debt assumed by her husband. We transferred the case to this court on our own motion.

We affirm the judgment in part, reverse in part, and remand the case to the Probate Court for entry of an amended judgment consistent with this opinion.

1. In December, 1991, the husband filed a complaint for divorce in the Worcester Division of the Probate and Family Court Department. The trial commenced on June 1, 1993, and on December 14, 1993, the judge granted a judgment of divorce nisi, which was made absolute on March 15, 1994. The wife filed a notice of appeal dated January 12, 1994, with respect to certain portions of the judgment that applied to the division of marital property. On December 28, 1995, the judge issued his "findings of facts and rationale of judgment."

The judge included future payments from the wife's retirement plan as a part of the divisible marital estate; her retirement plan contributions had accrued during the course of the marriage.[1] He found that the wife's contributions to her retirement plan totalled approximately $32,000, and that she was eligible for retirement after September 4, 1993, on completion of twenty years of service. The judge found that the then present value of the wife's future retirement plan benefits, at the age of sixty, was $83,000.[2]

The judge found that the husband would be entitled to receive Social Security old age benefits,[3] but concluded that, under Federal law, such benefits are not a divisible marital asset. The judge nevertheless concluded that, in order to provide for an equitable division of the marital estate, "the award of a larger overall percentage of the estate to the Wife was necessary to equalize the standard of living both parties will enjoy in the present and future." After evaluating the total marital estate at

[1]At the time of the trial, the wife had been employed as a teacher at the Worcester Vocational High School for almost twenty years, earning a yearly salary of $38,000. She participates in a retirement plan through the Massachusetts teachers retirement fund.

[2]For purposes of calculating the present value of the wife's retirement plan benefits, the judge assumed that the wife would terminate her employment as of January 22, 1993, and would make no further contributions to the plan.

[3]At the time of trial, the husband (who was then earning approximately $50,000 a year) was not eligible to receive any Social Security benefits. The judge made no finding as to any lump-sum present value of the husband's future anticipated Social Security benefits; he did find that if the husband continued to earn approximately $55,000 each year until retirement, his anticipated monthly payment from Social Security benefits would be $1,115 per month, assuming retirement at the age of sixty-two.

$311,833, the judge awarded $169,698 of the net marital assets (58%) to the wife and $122,135 (42%) to the husband.

The wife argues that the judge erred by failing to offset the husband's future interest in Social Security old age benefits against her future retirement plan benefits. We disagree. As to inclusion of the wife's future retirement plan benefits in the marital assets, G. L. c. 208, § 34, confers broad discretion on a judge to make an equitable property division in connection with a divorce. *Early* v. *Early*, 413 Mass. 720, 727 (1992), and cases cited. The statute provides that, when dividing the marital estate, a judge may include as part of the marital estate any vested and nonvested retirement (including pension) benefits of either spouse. G. L. c. 208, § 34. See *Early*, *supra* at 723; *Moriarty* v. *Stone*, 41 Mass. App. Ct. 151, 156 (1996) (retirement benefits accrued before marriage may be included as marital assets); *Johnson* v. *Johnson*, 22 Mass. App. Ct. 955, 956 (1986). It was proper for the judge to include the wife's future retirement plan benefits as a marital asset.

As to any Social Security old age benefits that the husband anticipates, the judge was correct to conclude that Federal law prohibits such benefits from being included as an asset in the marital estate. Title 42 U.S.C. § 407(a) (1994) provides that "[t]he right of any person to any future payment . . . shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing . . . shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ." While 42 U.S.C. § 659(a) permits the assignment of Social Security monies to pay for alimony and child support,[4] it

---

[4]Title 42 U.S.C.A. § 659(a), as amended, Pub. L. 104-193, tit. III, § 362(a) (West Supp. 1997) provides:

"Notwithstanding any other provision of law (including section 407 of this title and section 5301 of Title 38) . . . moneys . . . due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person . . . to any legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony."

explicitly excludes for the purposes of the statute "any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B)(ii).

Because there is an important difference between pensions and Social Security benefits, it is appropriate for a judge to treat public or private pension funds differently from Social Security old age benefits for the purposes of marital property distribution. An employee who participates in a pension plan has an enforceable contractual right to receive future benefits from the plan. Social Security old age benefits, however, "are not deferred compensation for services rendered but rather a governmental safety net for the retired," and as such, "[t]he employee has no contractual right to such benefits." *Cox* v. *Cox*, 882 P.2d 909, 920 (Alaska 1994), *S.C.*, 931 P.2d 1041 (Alaska 1997), citing *Mann* v. *Mann*, 778 P.2d 590, 592 (Alaska 1989). See *Hisquierdo* v. *Hisquierdo*, 439 U.S. 572, 575 (1979) (observing that "[l]ike Social Security, and unlike most private pension plans, railroad retirement benefits are not contractual"). Anticipated Social Security old age benefits are indefinite because Congress may alter, amend, or repeal any provision of the Social Security Act at any time. 42 U.S.C. § 1304 (1994). See *Flemming* v. *Nestor*, 363 U.S. 603, 617 (1960) (Congress may deny "noncontractual governmental benefit").

The wife urges us to construe narrowly the Supreme Court's holding in *Hisquierdo* to apply only to benefits governed by the Federal Railroad Retirement Act, 45 U.S.C. §§ 231-231t. In particular, she focuses on the language of 45 U.S.C. § 231m that precludes the anticipation of retirement benefits[5]; in contrast, she argues, the Social Security Act's antiassignment provision, 42 U.S.C. § 407, includes no language addressing "anticipated" benefits. Thus, she argues, a court may anticipate a spouse's

---

[5]Title 45 U.S.C. § 231m(a) (1994) provides in part:

"[N]o annuity or supplemental annuity [provided pursuant to the Railroad Retirement Act] shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated."

future Social Security benefits and include them in the marital estate for equitable distribution. We disagree.

First, we observe that in *Hisquierdo*, the Supreme Court analogized the Railroad Retirement Act benefits at issue to those administered by the Social Security Administration, discussing the alimony and child support exceptions to the antiassignment rule, 42 U.S.C. § 659 (1994), and the exclusion of property distribution from these exceptions, 42 U.S.C. § 662.[6] *Hisquierdo, supra* at 587.[7] In addition, we are reluctant to permit the inclusion of anticipated Social Security old age benefits as part of the marital estate because Congress has expressed an intent to preempt this entire area of law. The Social Security Act provides disability and old age benefits for divorced spouses (here the wife) on the basis of the spouse's Social Security insurance when the covered spouse (here the husband) begins collecting retirement or disability benefits, provided that the divorced person is at least sixty-two years old, 42 U.S.C. § 402(b)(1)(B) and (c)(1)(B); has not remarried, 42 U.S.C. § 402(b)(1)(C) and (c)(1)(C); and was married to the covered spouse for at least ten years before the divorce, 42 U.S.C. § 416(d)(1)-(2).[8] See C.P.

---

[6]On August 22, 1996, § 662 was repealed. Pub. L. 104-193, tit. III, § 362(h)(i)(d), 110 Stat. 2246, 2247. On the same day, however, Congress amended § 659 to incorporate most of the definitions formerly found in § 662. Pub. L. 104-193, tit. III, § 362(a), 110 Stat. 2245; the exclusion of property distribution from the alimony exception to the antiassigment rule was codified at 42 U.S.C. § 659(i)(3)(B)(ii).

[7]In response to *Hisquierdo* v. *Hisquierdo*, 439 U.S. 572 (1979), Congress amended 45 U.S.C. § 231m in 1983 to allow courts to anticipate supplemental railroad retirement benefits in order to distribute property in accordance with court-ordered property settlements pursuant to divorce. Pub. L. 98-76, tit. IV, § 419(a)(3), 97 Stat. 938 (1983). That same year Congress also amended 42 U.S.C. § 407(b), the Social Security Act's antiassignment provision, to provide that "[n]o other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section." In response to these amendments, one court has noted, Pub. L. 98-21, tit. III, § 335(a), 97 Stat. 130 (1983), "Knowing that in *Hisquierdo* the [C]ourt considered the [R]ailroad [R]etirement [A]ct and the [S]ocial [S]ecurity [A]ct to be analogous, it seems that [C]ongress may well have intended to overrule *Hisquierdo* with regard to the [R]ailroad [R]etirement [A]ct, but codify *Hisquierdo* with regard to the [S]ocial [S]ecurity [A]ct." *In re the Marriage of Boyer*, 538 N.W.2d 293, 295 (Iowa 1995).

[8]In this case because the wife will receive a State government pension, any potential payments to her pursuant to her husband's Social Security benefits are

Kindregan, Jr. & M.L. Inker, Family Law and Practice § 41.18, at 96 (2d ed. 1996); *In re the Marriage of Boyer*, 538 N.W.2d 293, 295 (Iowa 1995); *Matter of the Marriage of Swan*, 301 Or. 167, 176-177 (1986). See also *Richard* v. *Richard*, 659 S.W.2d 746, 749 (Tex. Ct. App. 1983) ("Additional reasoning indicating Congressional intent to preempt state community property is shown by the fact that Congress expressly provides in 42 U.S.C. § 402[b][1] for certain benefits for divorced spouses so that a divorced spouse would not have to depend upon a state's system of marital property law"). Decisions by State courts in this area that may differ in outcome would disrupt a uniform Federal scheme of benefits and would produce results that would vary from State to State. *In re the Marriage of Kelley*, 64 Cal. App. 3d 82, 99 (1976).

The wife relies on decisions from other jurisdictions in support of her argument. See, e.g., *In re Marriage of Brane*, 21 Kan. App. 2d 778 (1995); *Pongonis* v. *Pongonis*, 606 A.2d 1055, 1058 (Me. 1992); *Matter of the Marriage of Knipp*, 809 P.2d 562, 564 (Kan. 1991); *Rudden* v. *Rudden*, 765 S.W.2d 719, 720 (Mo. Ct. App. 1989). But each of those decisions affirms the majority view, which we join, that anticipated Social Security old age benefits may not be included as part of the marital estate. Those cases do hold, however, that a judge may consider a spouse's anticipated Social Security benefits as one factor, among others, in making an equitable distribution of the distributable marital assets. In this case the judge did precisely that; he considered the husband's anticipated Social Security old age benefits, and awarded the wife a larger percentage of the marital estate "to equalize the standard of living both parties will enjoy in the present and future."[9] We conclude that the judge acted correctly. There is no requirement

---

subject to reduction. 42 U.S.C. § 402(b)(4)(A) (1994); 20 C.F.R. § 404.408a (1996).

[9]Courts in some jurisdictions have prohibited even this limited treatment of Social Security benefits, and have concluded that a court may not even consider such benefits when dividing a marital estate. See, e.g., *Wolff* v. *Wolff*, 929 P.2d 916, 921 (Nev. 1996); *Olson* v. *Olson*, 445 N.W.2d 1, 11 (N.D. 1989); *Matter of the Marriage of Swan*, 301 Or. 167, 176 (1986). We decline to adopt this approach. In *Cohen* v. *Murphy*, 368 Mass. 144 (1975), decided before *Hisquierdo*, we anticipated a Federal exemption argument that veterans' benefits could not be used to calculate the amount of support to be ordered against the benefits' recipient in support proceedings. Without addressing this argument, we noted that "[w]hatever the effect of any exemption, we think it does not prevent consideration of Federal benefits in determining the amount of support to be

as to precisely how a judge must consider anticipated Social Security benefits; based on the record in this case we conclude that the judge was not plainly wrong. *Rice* v. *Rice*, 372 Mass. 398, 402 (1977).

The wife challenges three other findings of the judge. She claims that the judge erred by not including the husband's automobile as a marital asset, and by not counting as part of the marital estate monies the husband withdrew from the couple's home equity and savings accounts prior to the divorce. She also argues that the judge incorrectly undervalued the equity in a vacation home owned jointly by the couple.

We review a trial judge's distribution of marital assets by employing a two-step analysis. First, we examine the judge's findings to determine whether he considered all relevant factors enumerated in G. L. c. 208, § 34. We then determine whether the reasons for the judge's conclusions are apparent in his findings and rulings, with the judge's rationale apparent in the judgment. *Bowring* v. *Reid*, 399 Mass. 265, 267 (1987). We shall not reverse a judgment of property division unless "plainly wrong and excessive." *Id.*, quoting *Redding* v. *Redding*, 398 Mass. 102, 107 (1986).

Using that analysis, we conclude that the judge was correct to exclude the value of the husband's automobile as part of the marital estate; the judge found that the husband had sold his automobile and applied the proceeds of the sale to improve the vacation house owned by the couple. The latter was included as a marital asset. The judge also found that the husband had withdrawn funds from the couple's savings account; he correctly credited this amount to the husband when dividing the estate.

As to the vacation home, the judge recognized that the husband had withdrawn money from a home equity loan account for which the vacation home was collateral; he concluded that these funds had been used for family purposes. However, for purposes of calculating the marital assets, the judge valued the vacation home by subtracting from the property's fair market value (agreed to by both parties) the full amount of the available home equity line of credit ($15,000) rather than the amount actually borrowed by the husband on that line of credit ($7,265). Because

---

ordered." *Cohen*, *supra* at 148. See *Early* v. *Early*, 413 Mass. 720, 722 (1992) (judge considered wife's expected Social Security benefits when dividing marital estate).

the amount borrowed was less than the total loan amount available, we conclude that the judge undervalued the equity of the home by $7,735.

The judgment of the Probate and Family Court is affirmed in part and reversed in part. We remand the case for a recalculation of the marital assets and amendment of the judgment consistent with this opinion.

*So ordered.*