Brian Hayes (husband) appeals from portions of an amended judgment of divorce nisi related to child custody, the parenting plan, and the division of marital assets.[2] We affirm.
1. Custody and parenting time. The husband claims the judge erred in awarding sole legal custody of the parties' children to Jennifer Hayes (wife) pursuant to G. L. c. 208, § 31, and reducing the husband's parenting time from the amount originally awarded in the judge's temporary order. We disagree.
"In making an order or judgment relative to the custody of children, the rights of the parents shall, in the absence of misconduct, be held to be equal, and the happiness and welfare of the children shall determine their custody." G. L. c. 208, § 31. The overriding concern must be the best interests of the child. See J.S. v. C.C., 454 Mass. 652, 656 (2009) ; Rolde v. Rolde, 12 Mass. App. Ct. 398, 402 (1981). "The decision of which parent will promote a child's best interests 'is a subject peculiarly within the discretion of the judge.' " Bak v. Bak, 24 Mass. App. Ct. 608, 616 (1987), quoting from Jenkins v. Jenkins, 304 Mass. 248, 250 (1939). Upon review, we uphold findings of fact unless clearly erroneous and consider whether the judge weighed all relevant factors in determining the best interests of the child. J.S. v. C.C., supra at 657. No definitive set of factors must be considered. El Chaar v. Chehab, 78 Mass. App. Ct. 501, 506 (2010). Rather, the judge must "identify pertinent factors in assessing the welfare of the child and weigh them as [he] sees fit." Smith v. McDonald, 458 Mass. 540, 547 (2010).
Here, the judge found that the parties demonstrated difficulties in communicating with each other and had "no cooperation ... relative to the children's upbringing and decision-making." He further found that "[t]he husband has displayed inflexibility with regard to school vacations and holidays." The judge characterized the husband's behavior toward the wife as harassing, intimidating, demanding, and belligerent.
The judge also made findings regarding the children's stability while in the husband's care. The "[h]usband ... brought the children late to school on nine (9) of the previous thirteen (13) Fridays," and they missed school-related activities due to the parenting schedule. The arrangement did not allow the children "sufficient down or relaxation time." Further, the judge found that the "[h]usband's parenting style is dictatorial and authoritative."[3] For example, at trial, there was evidence that the husband threatened to break the daughter's fingers if she disobeyed him and that he called her a "retard." In contrast, the "[w]ife [is] able to provide for the emotional needs of the children."[4]
With respect to the judge granting sole legal custody to the wife, the judge found that this arrangement served "[t]he best interests of the children." In doing so, the judge considered the parties' ability to coparent the children and found that awarding joint legal custody would have been "an invitation for continued warfare and conflict" between the parties. See Rolde v. Rolde, 12 Mass. App. Ct. at 402 ; R.H. v. B.F., 39 Mass. App. Ct. 29, 43 (1995) ("The award of joint legal custody is inconsistent with the overwhelming undisputed evidence of hostility between the parents").
With respect to the husband's parenting time, the judge reduced the amount that was awarded in the July 2, 2014, temporary order by one day. The judge based this adjustment on finding that the previous parenting plan did not provide "the children with the stability necessary to insure their healthy development." The judge did not abuse his discretion in fashioning the parenting plan. Compare Sagar v. Sagar, 57 Mass. 71, 79 (2003).
2. Home equity line of credit. The husband also claims the judge erred in finding that the majority of funds from the parties' $178,000 home equity loan were used to establish Knife Safe, LLC, and that, based on this erroneous finding, the judge improperly assigned the entire home equity loan debt to the husband pursuant to G. L. c. 208, § 34. We review the judge's factual findings for clear error and give due regard to those that rest on credibility assessments. Mass.R.Dom.Rel.P. 52(a). We see no error in the judge's finding and therefore need not reach the issue of the debt's assignment.[5]
The husband obtained a $40,000 loan from the Greenfield Cooperative Bank to initially purchase and fund Knife Safe, a company in the husband's exclusive control. However, he testified that he intended to use the $178,000 home equity loan to allow Knife Safe to develop the Paper Stone kitchen products, which would then be exclusively distributed through Lamson & Goodnow.[6] In total, Knife Safe spent $100,000 of the loan to purchase materials for developing the products. Another $40,000 funded the repair and upgrade of part of the Lamson & Goodnow facility, which was, according to his testimony, "in connection with the operation of Knife Safe."[7] Further, the loan "went onto the books of Knife Safe and was contained in their balance sheet as of December 31st, 2013." The judge's finding was not erroneous. See Williams v. Massa, 431 Mass. 619, 631 (2000).
3. Home equity valuation. Finally, the husband claims error in the judge's (1) finding of the fair market value of the marital home; (2) assignment of the parties' home equity loan debt to the husband without making a corresponding adjustment to the home's net equity; and (3) disregarding the actual balance of the parties' purchase money mortgage. Again, we review the judge's factual findings for clear error, and the application of the law to those facts for abuse of discretion.
First, the husband alleges the judge erred in calculating the net home equity value by using an outdated $400,000 municipal assessment, which was reported on the husband's August 21, 2014, financial statement, as the fair market value. In the same financial statement, the husband listed his estimation of the fair market value of the property as $439,000. However, the assessed $400,000 value he reported was echoed by the $399,000 fair market value evinced by both the wife's December 8, 2015, financial statement and trial testimony.[8] The parties failed to present expert testimony that would support a different valuation. Contrary to the husband's claim, the judge was not required to use any one source in setting the fair market value for purposes of determining the home equity, so long as he considers the statutory factors and makes "an honest exercise of judicial discretion." Downing v. Downing, 12 Mass. App. Ct. 968, 969 (1981). See Moriarty v. Stone, 41 Mass. App. Ct. 151, 155 n.3 (1996). Because evidence supported the judge's finding, we see no error.
Second, the husband claims that the judge should have adjusted the net equity of the home in light of assigning the home equity debt to the husband. Again, we disagree. As the judge could have correctly reasoned, even if the wife were to sell the home tomorrow, the proceeds from that sale would first be applied to satisfy the purchase money and home equity loans, leaving $62,000 remaining. Although the judge's division could result in an imbalance because of the parties' respective debt assignments, G. L. c. 208, § 34, required the judge to make an equitable, not equal, division of the marital assets. See Williams v. Massa, 431 Mass. at 626. This was achieved here.[9] Any resulting imbalance of home equity would not be so extraordinary as to constitute an abuse of discretion. See Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 861 (1989) ("Mathematical precision is not required of equitable division of property").
Third, and finally, the husband claims the judge erred in valuing the purchase money mortgage according to its original $160,000 balance. He argues the correct balance was $147,000, as of the date of trial. Again, we disagree. It was within the judge's discretion to establish the date of valuation as the date of the temporary order, after which the wife made $13,000 worth of payments in accordance with the 2014 temporary order. See Moriarty v. Stone, supra at 154. The wife's payments alone reduced the mortgage balance, and it was within the judge's discretion to determine that the husband should not receive the benefit of an increase in equity toward which he did not contribute. See Savides v. Savides, 400 Mass. 250, 252-253 (1987).
Amended judgment of divorce dated April 19, 2016, affirmed.

Subsequent further amended judgments of divorce are not the subject of this appeal.

The husband claims that the evidence points to a finding that the wife's, rather than his, conduct had a "deleterious effect" on the children. See Rolde v. Rolde, 12 Mass. App. Ct. at 404. The judge was in the best position to observe and assess the parents' testimony at the time of trial. Id. at 403.

The husband additionally argues that the custody and parenting time provisions fail to consider his role as the "primary caretaker." This argument fails in two respects. First, the judge made no finding that the husband's weekend parenting time made him the children's primary caretaker. Second, even assuming that the judge had made such a finding, no presumption for sole custody in favor of the primary caregiver exists. See G. L. c. 208, § 31. Cf. Custody of Kali, 439 Mass. 834, 844 (2003) (with regard to statutory provisions governing nonmarital children, no presumption exists because "[t]here may be serious shortcomings in the primary caretaker's parenting to date").

We note, however, that assigning to the wife the portion of the home equity loan debt used in connection with Knife Safe would not further the equitable goals of G. L. c. 208, § 34. After considering the § 34 factors, it was within the judge's discretion to assign the entire debt to the husband. See T.E. v. A.O., 82 Mass. App. Ct. 586, 596-599 (2012).

Lamson & Goodnow is a business owned by the wife's parents, of which the husband was president and chief executive officer.

The remaining $30,000 was used to finance a home improvement project at the marital home.

The $1,000 difference between these two valuations is negligible and was within the judge's discretion to disregard.

The husband improperly relies on Mahoney v. Mahoney, 425 Mass. 441, 447-448 (1997), for the proposition that relieving a property owner of a debt requires an adjustment to the net equity. In Mahoney, the judge erred by subtracting the full amount of the home equity loan from the fair market value, rather than the amount actually drawn from the loan. The judge therefore undervalued the equity by the difference between the amount borrowed and the amount actually used. That is not what happened here. The judge properly counted the home equity line of credit: $178,000 was borrowed and the same amount was used by the husband toward his business ventures and toward the home improvement project. No error resulted. Compare ibid.